IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RICK TAPIA,**

    **Petitioner,**

vs.                                        No. CIV 98-100 BB/LCS

**TIM LeMASTER, Warden at New Mexico State Penitentiary, and THE ATTORNEY GENERAL FOR THE STATE OF NEW MEXICO,**

    **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon the Order to Show Cause, filed August 26, 2000 *(Doc. 50)*. The Court, having considered the submissions of the parties, record, relevant law, and being otherwise fully informed makes the following proposed findings:

Proposed Findings

1.    Petitioner Rick Tapia is currently incarcerated and proceeding by and through his attorney, Jane Greek. Petitioner is confined pursuant to the Judgment, Sentence and Commitment of the Fourth Judicial District Court for the County of Mora, State of New Mexico dated February 9, 1996 ("Judgment and Sentence"). By that Judgment and Sentence, Petitioner was convicted of second degree murder for the killing of Joaquin Martinez[1] and was sentenced to twenty years imprisonment, to be followed by two years of mandatory parole.

---

[1] In light of the fact that there are numerous individuals, witnesses and jury members, with the last name of Martinez, I will refer to Joaquin Martinez as the "victim" for the remainder of the opinion.

2. The Petitioner filed a direct appeal on August 20, 1996. Tapia raised a number of issues within his appeal. The appellate court affirmed Tapia's conviction by its Memorandum Opinion filed November 27, 1996.

3. Petitioner then filed a Petition for Writ of Habeas Corpus in state court on January 22, 1998. In that petition, Tapia raised issues of ineffectiveness of trial counsel. His argument, as presented in that Petition, was that his counsel was ineffective because she had difficulty meeting with him or investigating the crime scene since she was located in an office in Las Vegas, sixty miles from Mora County. (Def. Answer Ex. J at 3). Petitioner also raised the issue that he was denied a fair trial because he was not allowed to introduce evidence of his state of mind at the time of the incident. (Def. Answer Ex. J at 4). The state district court summarily dismissed his petition for writ of habeas corpus on January 27, 1998. (Def. Answer Ex. K).

4. On January 26, 1998, the Petitioner filed his Application for a Writ of Habeas Corpus in this action. Tapia raised six claims including the trial court's failure to grant a change of venue, the trial court's failure to grant Petitioner's continuance, and an ineffective assistance of counsel claim. I made proposed findings in a Recommended Disposition, filed August 12, 1999 (*Doc. 34*), in which I recommended that the Petitioner's ineffective assistance of counsel claims were not fairly presented to the state courts and that state remedies must be exhausted before the Petitioner can file for a Writ of Habeas Corpus in federal court. *See State v. Tapia*, CIV98-00100 (Aug. 12, 1999). I noted that because the issues of trial counsel's failure to exercise peremptory challenges and to present exculpatory evidence were never presented before the New Mexico state courts, the Petitioner had not exhausted his state remedies. *Id*. On September 14, 1999, the district court adopted my Recommended Disposition (*Doc. 37*). The district court stated that I

correctly determined that the "new claims (ineffective assistance in counsel based on attorney's failure to exercise peremptory challenges and failure to present exculpatory evidence) were not presented to the state courts in the same legal posture as they were presented to this Court." (*Doc. 37*). I therefore allowed the Petitioner until October 10, 1999 to file, with the state court, a habeas corpus petition which would include these two claims. I also held that the remaining exhausted claims that were presented to federal court within the Petitioner's first habeas corpus petition were to be held in abeyance.

5.      The Petitioner filed a second Petition for Writ of Habeas Corpus in state court on September 29, 1999. In that petition, Tapia raised two claims of ineffective assistance of counsel. The first claim asserted that his attorney failed to introduce exculpatory evidence during his trial. (Amended Answer Ex. N at 1-2). The second claim asserted that his attorney failed to exercise unused peremptory challenges to strike prejudiced jurors. (Amended Answer Ex. N at 5). The state district court denied his petition for Writ of Habeas Corpus on February 29, 2000. (Amended Answer Ex. O).

6.      Once Tapia exhausted his state court remedies with respect to the ineffective assistance of counsel claims, on April 5, 2000 he filed a motion in federal court for an order allowing him to amend his petition. (*Doc. 42*). This Court granted Petitioner's Motion to Amend Petition. The order stated that the "Petitioner is granted leave to amend the petition to include ineffective assistance of counsel claims based on his trial attorney's alleged failure to introduce exculpatory evidence and failure to exercise unused peremptory challenges to strike jurors." (*Doc. 47*).

7.      Subsequently, the Petitioner filed an Amended Petition for Writ of Habeas Corpus

3

in federal court on July 6, 2000. (*Doc. 48*). Tapia brought four claims including:

> 1) Petitioner was denied his Sixth Amendment right to a fair trial when the trial court refused to grant the Petitioner a continuance to allow his counsel time to adequately prepare for trial, and to discover and develop exculpatory evidence in light of the state's last minute disclosure of inculpatory evidence.
>
> 2) Petitioner was denied his Sixth Amendment right to counsel because of his attorney's failure to introduce exculpatory evidence and failure to exercise unused peremptory challenges on prejudiced jurors.
>
> 3) Whether Petitioner was denied his Sixth Amendment right to a fair trial by the trial court's refusal to change the venue of Petitioner's trial from Mora, New Mexico.
>
> 4) Whether Petitioner's trial was so infected by error as to render his trial fundamentally unfair in violation of his rights under the Sixth and Fourteenth Amendments.

In summary, claims Nos.1 and 3 were brought in Petitioner's first petition and were held to be sufficiently exhausted. Claim No.2 contains claims that the Petitioner was ordered to exhaust in state court. Finally, claim No.4 was not brought in either Petitioner's first or second petitions.

      8.      On December 4, 2000, I filed Proposed Findings and Recommended Disposition (*Doc. 54*) where I recommended dismissal of claims Nos. 1, 3, and 4 and recommended denying the Respondent's Motion to Dismiss with respect to claim No. 2.  Objections were subsequently filed and the district judge adopted the recommended disposition on January 24, 2001 dismissing claims 1, 3, and 4. (*Doc. 61*). In conjunction with my recommended disposition, I issued an Order to Show Cause why the Petitioner's ineffective assistance of counsel claim should not also be dismissed. The Petitioner was ordered to produce evidence or refer to specific portions of the record which asserts that "counsel's representation fell below an objective standard of reasonableness" by not introducing exculpatory evidence or by failing to exercise unused peremptory challenges *and* that "there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U. S. 668, 688 (1984)**.**

## Recommended Disposition

9. Tapia argues that he received ineffective assistance of counsel in two areas of his trial. First, Tapia asserts his trial was rendered fundamentally unfair by his counsel's failure to exercise unused peremptory challenges on two jurors who had connections to the victim's family and the state's witnesses. Second, Tapia asserts that he was denied effective assistance because his trial counsel failed to present evidence at trial that would have supported his self-defense claim.

10. In order to establish ineffective assistance of counsel, Tapia must show his counsel's representation fell below an objective standard of reasonableness *and* there is a reasonable probability that, but for his unprofessional errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 668, 104 S.Ct. 2052, 2052 (1984). To demonstrate constitutional deficiency, Tapia must show that counsel's performance was completely unreasonable, not simply ill-advised in hindsight. *See Fowler v. Ward*, 200 F. 3d 1302, 1309 (10th Cir. 2000); *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997). "To be ineffective, the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *See Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994). Similarly, to show unconstitutional prejudice, Tapia must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U. S. at 694. An ineffective assistance claim may be resolved on either performance or prejudice grounds alone. *See Hatch v. Oklahoma*,

58 F. 3d 1447, 1457 (10th Cir. 1995).

11.     The Strickland inquiry is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F. 3d 1362, 1367 (7th Cir. 1997). A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U. S. at 689. After a methodical review of the record in its entirety, including the recorded cassette tapes of the voir dire proceedings and the trial, I approach the issue of whether the trial attorney's approach was within the ambit of reasonable trial strategy or if it constituted ineffective assistance.

12.     First, Tapia contends that his trial counsel provided him with incompetent assistance when counsel failed to utilize a peremptory challenge of potentially "prejudicial juror[s]." He maintains that counsel should have struck jurors, Connie Martinez, because she was a neighbor of Robert Martinez, Sr. and Jr. (state witnesses), and Mary Martinez, because she was an acquaintance of the victim's grandmother.

13.     Early in the jury selection process, the trial court asked the panel members multiple questions including whether any of them knew or had heard anything about the facts of the case. (01/11/96 T1). Neither Connie or Mary responded in the affirmative. (01/11/96 T1). Following the court's questions to the venire, both the state and the Defendant's attorney posed questions to Connie and Mary individually. The dialogue for each juror was as follows:

Defense Counsel:
"What about his grandmother? You don't know her from the senior citizen center?"
Mary Martinez:

6

"I know that they are from around here but I do not know her that well."
Defense Counsel:
"So you feel that you could be completely fair and impartial?"
Mary Martinez:
"Yes." (01/11/96 T3).

State's Attorney:
"Robert Martinez, Sr. and Robert Martinez Jr., also known as 'Bambi'?" Does anyone know those two people and will that fact effect your ability to be fair in this case?"
Connie Martinez:
"They are our neighbors....[inaudible]"
State's Attorney:
"Well, will the fact that they are your neighbors effect your ability to be fair in this particular case? You can put that relation aside and judge the case fairly?"
Connie Martinez:
"Yes."

14.     After reviewing the transcript of the voir dire process, I believe that defense counsel's strategic decision to allow these two jurors to sit, cannot now be second-guessed using the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Because Tapia has failed to sustain his burden of proving that counsel's performance was deficient, the Court need not determine whether he was prejudiced by counsel's alleged nonfeasance. *See Strickland*, 466 U.S. at 697, 700, 104 S.Ct. 2052; Stokes, 851 F.2d at 1092.[2] Moreover, a counsel"s failure to exercise peremptory challenges does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was prejudiced by his counsel"s failure to exercise the challenges. *See, e.g., Mattheson v. King*, 751 F.2d 1432, 1438 (5th Cir.1985), *cert. dismissed*, 475 U.S. 1138, 1143 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) ("[W]hile Mattheson complains that counsel failed to exercise any peremptory challenges, Mattheson does not identify the juror or

---

[2]     Even if I were to examine whether these two jury members' presence on the jury prejudiced the outcome of the case, the Petitioner does not offer any evidence as to whether their connections to the witnesses and victim prejudiced their vote.

7

jurors that should have been removed by counsel, nor alleges that any were unfavorably disposed to Mattheson."); *see also Crisp v. Duckworth*, 743 F.2d 580, 587 (7th Cir.1984), cert. denied, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985) ("Crisp has not shown that he suffered any degree of prejudice ... [from defense counsel's failure] to challenge a single juror in a first degree murder trial...."). Here, Tapia has advanced no hypothesis, beyond a bald assertion that counsel's performance was inadequate, that would demonstrate a reasonable probability of prejudice arising from the failure to exercise all of the peremptory challenges. He has introduced no set of facts suggesting bias of one or more of the jurors; nor has he alleged that the panel was tainted by the intentional exclusion of a significant segment of the community. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Finally, while I do not suggest that a counsel's failure to exercise any peremptory challenges may never give rise to a successful claim of ineffective assistance of counsel, the use of peremptory challenges to construct a fair and impartial jury panel will normally fall squarely within the realm of a tactical trial decision. Tapia has failed to show prejudice from that decision here.

      15.    Tapia next contends he was prejudiced by his counsel's failure to introduce cumulative evidence to support his claim of self-defense. Tapia's ineffective assistance of counsel claim centers in large part on his allegation that trial counsel failed to introduce testimony of three witnesses who would have supported his self-defense claim. Specifically, Tapia proffers the written statement of Mr. James Duran and the recorded statements of Ms. Barbara Carrillo and Ms. Rita Sandoval, all three of whom were present at the parking lot where the incident

occurred.[3] According to Tapia, this evidence would have "given the jury a basis to believe Rick Tapia's testimony by corroborating other witnesses and explaining key details that Rick Tapia could not." *See* Pl. Compl. at 19.

16.     Specifically, Mr. Duran stated that he witnessed the victim fighting and that a knife flew from victim's direction and landed in front of his feet. (Pl. Brief Aff. A). Mr. Duran then stated that he, himself, picked up the knife, noticed blood on it, and then dropped it. (Pl. Brief Aff. A). Tapia argues that this testimony, if introduced, would have been proof that a second knife was at the scene of the fight, particularly if Mr. Duran had testified that the knife seized from Tapia was not the knife which he had picked up at the scene. Ms. Carrillo stated that after the victim was stabbed, she saw Andrew Trujillo go over and pick him up under the arm to look at his face. (Pl. Brief Aff. B). The Petitioner asserts that Ms. Carrillo's testimony "would have let the defense explain what could have happened to the knife that Mr. Duran saw flying through the air, the knife with which Mr. Tapia said he was attacked, the knife which the prosecution argued never existed." (Pl. Brief at 18). Ms. Rita Sandoval, another witness at the incident, stated within her statement that one of the men fighting with the victim was tall, in a white T-shirt with light-colored pants, a description which fits that of Andrew Trujillo, another member of the group Tapia was with that night. (Pl. Brief Aff. C). Tapia argues again that "this would have given the jury an opportunity to conclude that at least [the victim's] back wound was inflicted by someone other than Mr. Tapia and that the knife which killed [the victim] was not the one seized from Mr. Tapia, but one introduced into the fight by [the victim] or some other participant." (Pl. Brief at

---

[3] James Duran's statement is a written statement prepared by him the day after the incident. Barbara Carrillo's and Rita Sandoval's statements are interviews, one taken a few days after the incident in the Judge's Chambers and the other taken a few months after the incident at the home of Barbara Carrillo.

19).

      17.    Without evidence of trial counsel's strategy, it is difficult to determine whether or not Tapia's representation fell below an objective standard of reasonableness. The Court abides by the long standing principle that judicial scrutiny of counsel's performance is highly deferential. An attorney's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance. *See United States v. Glick*, 710 F.2d 639, 644 (10th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). Whether to call a particular witness is a tactical decision, and thus, a matter of discretion for trial counsel. *See Francis v. Dugger*, 908 F.2d 696, 703 (11th Cir.1990), cert. denied, 500 U.S. 910, 111 S.Ct. 1696, 114 L.Ed.2d 90 (1991); *see also Mitchell v. Kemp*, 762 F.2d 886, 890 (11th Cir.1985), *cert. denied*, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987); *see also United States v. Miller*, 643 F.2d 713, 714 (10th Cir.1981). It is the attorney's discretion to determine whether or not to submit evidence or to call a witness. Mere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel. Furthermore, an attorney's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance. *See United States v. Glick*, 710 F.2d 639, 644 (10th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). Consequently, when faced with overwhelming aggravating circumstances, trial counsel may have to decide which testimony is beneficial and which testimony is not. This is particularly true if such testimony would open the door to presentation of damaging evidence by the prosecution. *See Burger v. Kemp*, 483 U.S. 776, 791- 92, 107 S.Ct. 3114, 3124-25, 97 L.Ed.2d 638 (1987). Therefore, since

there is no evidence to the contrary, the Court finds that Tapia's representation was reasonable in light of the long standing principle that tactical decisions remain within the trial counsel's discretion.

19. 18. This does not end my inquiry, however. Assuming that counsel's actions were unreasonable, I will now analyze whether or not there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U. S. 668.[4] I proceed, then, to determine whether Tapia has demonstrated a reasonable probability that, but for his counsel's failure to introduce this evidence, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *See Lawrence v. Armontrout*, 31 F.3d 662, 667-68 (8th Cir.1994); cert. denied, 513 U.S. 1161, 115 S.Ct. 1124, 130 *1185 L.Ed.2d 1087 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

19. Considering the totality of the evidence before the jury in this case, *id.* at 695, I conclude that defense counsel's failure to introduce the proffered evidence does not undermine my confidence in the guilty verdict. This is not a case in which counsel failed to produce any evidence with respect to Tapia's self-defense claim. First, Barbara Carrillo testified at trial that the person fighting with Tapia had a knife in his hand and that Tapia did not. (1/17/96 T14). Second, Elaine Romero testified that she had Tapia's knife in her possession the entire evening. (1/18/96 T21). And lastly, Tapia, himself, testified that he was struck in the head by someone, fell to the ground, saw the victim with a knife, pushed him and then stabbed him. (1/18/96 T23).

---

[4] Under the holding in *Strickland*, Tapia cannot prevail on his ineffective assistance of counsel claim unless he establishes prejudice in addition to constitutionally deficient performance. *See Strickland*, 466 U.S. at 693, 104 S.Ct. 2052 (defendant is required to "affirmatively prove prejudice").

20. After reviewing the evidence proffered by the Petitioner and the evidence presented at trial, I fail to see how the Petitioner's evidence would further support his claim of self-defense and the possibility of a different outcome. First, Mr. Duran's statement, that he picked up a knife with blood on it, would have no beneficial effect unless he actually testified that the knife was not Tapia's, a matter about which the court will not speculate. The Petitioner has not produced any evidence that would indicate Mr. Duran would in fact testify to that effect. Even if he did testify that the knife was not Tapia's, there was sufficient testimony at trial leading to the possibility that Tapia did not have a knife during the fight. Specifically, Ms. Carrillo testified that she saw only the victim with a knife and not Tapia, (1/17/96 T15), and Ms. Romero testified that she had Tapia's knife in her possession all evening. (1/18/96 T14). The fact that Mr. Duran saw a knife with blood on it has little additional probative value when considering Tapia admitted to stabbing the victim. (1/18/96 T24). Second, Ms. Carrillo's statement concerning Mr. Trujillo's actions does not rise to the level of a *Strickland* violation. Even if Tapia's counsel had asked Ms. Carrillo while she was on the stand about Mr. Trujillo's actions, her response would not offer any weight to Tapia's self-defense claim. I see little connection between this proffered evidence, the fact that Mr. Trujillo picked up the victim from behind, and Tapia's claim of self-defense. And lastly, Ms. Sandoval's statement, that one of the men fighting with the victim matched the description of someone other than Tapia, is also irrelevant. The Petitioner asserts that Ms. Sandoval's statement would give the jury the opportunity to conclude that someone else inflicted the victim's back wound and that the knife seized from Tapia could have been introduced by some other participant. The victim's back wound was not an issue in the case. The cause of the victim's death was by the stab wound from the front. (1/18/96 T20). And since Tapia admitted to

stabbing the victim in his chest, this evidence has no relevancy to Tapia's self-defense claim. Additionally, as stated before, there was alternative evidence presented at trial that supports a self-defense claim. Moreover, there is no showing that the reason defense counsel did not ask these questions was for some other tactical reason.

      21.     As stated previously, in order to establish ineffective assistance of counsel, Petitioner must show that his attorney made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance prejudiced the defense in such a way as to render the result of the trial unreliable. *See Strickland*, 466 U. S. at 686-87. "To be ineffective, the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Dever v. Kansas State Penitentiary*, 36 F. 3d 1531, 1537 (10th Cir. 1994). *See also Hoxsie v. Kerby*, 108 F. 3d 1239, 1246 (10th Cir. 1997) (holding that to be constitutionally ineffective, counsel's performance must have been completely unreasonable, not merely wrong). Mr. Tapia fails to persuade me of a reasonable probability that the result of the trial would have been different when viewed against the backdrop of the presented evidence. Based on the nature of the evidence against him, none of the testimony submitted would likely have been of much service to Mr. Tapia.

      22.     After a thorough review of the record and the submissions by the parties, I conclude that Mr. Tapia has failed to meet the second prong of the *Strickland* test, demonstration of prejudice and that did receive effective assistance of counsel. Therefore, this Court recommends that the Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. §2254 be denied.

## **Recommended Disposition**

I recommend denying the Plaintiff's Motion Under 28 U.S.C. §2254 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Motion to Supplement the Record and dismissing this action with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**Leslie C. Smith**
**UNITED STATES MAGISTRATE JUDGE**